King v. Board of Council, City of Danville.

CASE 32.—ACTION BY ALLEN C. KING AGAINST THE BOARD OF COUNCIL, CITY OF DANVILLE, FOR DIVERTING WATER FROM HER MILL.—March 5.

# King v. Board of Council City of Danville

Appeal from Boyle Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for defendant, plaintiff appeals — Reversed.

1. Waters—Diversion—Actions—Evidence.—In an action by the owner of a gristmill for the diversion of water from a stream supplying power to operate the mill, evidence that roller flour had supplanted burr flour, for the manufacture of which plaintiff's mill was suitable, and that there was very little demand for the latter flour, was admissible on the issue of damages; it being proper for defendant to show that the value of the mill had been diminished from other causes.

2. Same—Instructions.—An instruction that if there had been, prior to five years before the commencement of the action, such a change in the market in the locality of the mill that there was such a preference for flour made by the roller process, as distinguished from the burr process, that it had rendered it unprofitable for the owner to operate the mill for any purpose, there could be no recovery, though water was diverted to such an extent as to forbid the operation of the mill, was erroneous, for the owner had the right to operate the mill for the use of himself and family, though there was no market for his flour.

3. Same—Damages.—One diminishing the natural flow of the

vol. 128—21

water in a stream supplying power to operate a mill, and thereby preventing the owner from operating it as fully as he otherwise might have done, resulting in pecuniary loss in its operation, is liable to the owner for such sum as will compensate him for the diminished value of the use of the mill; but if the diversion of the water did not affect the running of the mill, or cause any material injury to the owner, he could not recover.

4. Limitation of Actions—Accrual of Right of Action—Injury to Real Estate.—Where injury to real estate results from the construction of a permanent structure, the cause of action accrues on the completion of the structure.

5. Damages—Injury to Real Estate—Measure of Damages.—The measure of damages for injury to real estate resulting from the construction of a permanent structure is the difference between the value of the property before it became generally known that the structure would be built and its value just after the completion thereof.

6. Action—Splitting Causes of Action.—The damages to real estate resulting from the construction of a permanent structure are recoverable in one action, and the owner must sue for all the damages, past and future.

7. Limitation of Actions—Nature of Action—Action for Damages to Real Estate.—An action for damages to real estate, occasioned solely by the construction of a dam in a stream, is barred in five years after the construction of the dam.

8. Same—Time of Accrual.—An action for damages to real estate, resulting from the wrongful diversion and unlawful use of the water in a stream, does not accrue on the erection by the wrongdoes of a dam across the stream, and the owner of the real estate may recover for such damages as resulted from the diversion of the water during five years next preceding the commencement of the action, without reference to the time of the construction of the dam.

BRECKENRIDGE & BRECKINRIDGE for appellant.

M. C. SAUFLEY of counsel.

1. Because the lower court erred to appellant's prejudice in overruling his motion to strike certain portions of the first paragraph of appellee's answer; in overruling the general demurrer to the third paragraph of the original answer; in overruling his motion to strike a certain portion of the third paragraph of the original answer; in overruling demurrer to a portion of the third

King v. Board of Council, City of Danville.

paragraph of the original answer; and in overruling his motion to strike the amended answer as well as a general demurrer to said amended answer, to all of said rulings appellant at the time objected and excepted.

2. Because as set out in appellant's motion and grounds for a new trial, the trial court allowed, over the objections and exceptions of appellant a great mass of incompetent and irrelevant testimony to be introduced before the jury that was exceedingly prejudicial to appellant, and refused to allow appellant to introduce certain competent testimony.

3. The trial court, over appellant's objections and exceptions, gave instructions numbers 2, 3 and 4 to the jury, to appellant's prejudice, and refused to give instruction "A" offered by plaintiff and refused to add instruction "C" which appellant offered to be added to number four after the trial court had announced he would upon his own motion give number four, to all of which appellant objected and excepted at the time.

### AUTHORITIES CITED.

Newman on Pleadings, 511 to 519; Baum v. Winston, 3 Met., 127; Stuca v. Burden, 24 Ala., 130; 60 Am. Dic. 456; Bank of Hopkinsville v. Wes. Ky. Asylum, 21 Ky. Law Rep., 182; City of Elberton v. Hobbs, 49 S. E. 779, 121 Ga., 749; City of Emporia v. Soden, 25 Kan. 588, 605, 37 Am. Rep., 265; Sparks M'f'g Co. v. Newton, 41 Att. 385, 57 N. J. Eq., 367; Newman on Pleading, 514; Corbin, &c. v. Com., 2 Met., 381; Royer Wheel Co. v. Dunbar, 25 Ky. Law Rep., 746; McNinimy v. Avis, 4 Ky. Law Rep., 905; The N. Y. Rubber Co. v. Rotting, &c., 132 N. Y., 293; Pine v. Mayor, &c., City N. Y., 103 Fed. Rep., 339; Anderson v. Cincinnati Southern Ry., 86 Ky., 48; 16 Cyc., 1110 and 1111; Am. & Eng. Enc. of Law, 2 Ed., vol. 30, p. 368; Am. & Eng. Enc. of Law, 2 Ed., vol. 8, p. 722; Am. & Eng. Enc. of Law, 2 Ed., vol. 8, p. 555; Corning v. Troy Iron & Nail Factory, 40 N. Y., 204.)

FOX & JACKSON for appellees.

### QUESTIONS DISCUSSER AND AUTHORITIES CITED.

1. Pleadings.—An examination of pleadings filed by appellee shows a specific denial of each allegation of the petition.

2. Statute of Limitations.—The defendant pleaded in bar of plaintiff's right of action ,the five year and ten year statute of limitations and cities the following authorities: (Am. & Eng. Enc. Law, vol. 28, p. 983; Elizabethtown Lex. & Big Sandy Ry.

Co. v. Combs, 10 Bush, 393; J. & M. R. R. Co. v. Esterle, 13 Bush, 675, 676; L. & N. R. R. Co. v. Orr, 91 Ky. 114, 115; Rowlstone v. C. N. O. R. Co., 54 S. W., 2; Ky. Lumber Co. v. King, 65 S. W., 156-157.)

3. Motion for Peremptory Instruction.

4. Question of Evidence and Proof Introduced on Issues Involved, and Authorities Cited. (Anderson v. Cinti. Southern Ry., 86 Ky., 49 to 53; Wheatley v. Chrisman, 24 Pa., 298; Davis v. Getchell, 50 Me., 602; 79 A. M. Dec. 636; Williamson v. Lock Creek Canal Co., 78 N. C., 156; Ells v. Clemens, 21 Ont. Rep., 227; Gillis v. Chase, 31 Atl., 18; Garwood v. N. Y. C. & H. Ry. Co., 83 N. Y., 400; Union Mill & Mining Co. v. Farris, 2 Sawyer, 17; Pomeroy's Code Remedies, 4 Ed., sec. 546-7; Ency. Law & Procedure, vol. 16, p. 1110, 1116; Stephens Dig. Law Evidence; Mason v. Bruner's Admr., 10 Ky. Law Rep., 155; Amer. & Eng. Ency. Law, 1 Ed., 47; Jones on Evidence, 138-139.)

5. Instructions and authorities cited. (Bowman v. Bartlett, 3 Mon., 98; Sullivan v. Enders, 3 Dana, 66; Brubaker v. Poage, 1 Mon., 129; Branel v. Branel, 39 S. W., 62; City Louisville v. McGill, 52 S. W., 1053; Abbott's Trial Brief, 438.)

6. Plea of Estoppel—Authorities Cited. (Curtis v. LaGrande Hydraulic Water Co., 10 L. R. A., 489; Alexander v. Woodford Spring Lake Fishing Co., 90 Ky., 215.)

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Reversing.

Appellant is the owner of a gristmill located on the waters of the Dix river, in Boyle county, Ky. In the year 1804 appellee decided to build a system of waterworks for the town of Danville. With that aim in view it purchased some 8 acres of land on the Dix river about one and a half miles above appellant's mill. This land was purchased for the purpose of building and constructing across the river a large dam to accumulate and gather the water. The water thus accumulated and gathered was pumped from the pool above the dam to a standpipe erected within the limits of the town of Danville, and the water was in this way supplied to the citizens of Danville for fire

protection and other purposes. On the 31st day of December, 1904, appellant instituted this action against appellee, charging that the defendant had wrongfully and unlawfully diverted the water that had hitherto flowed to and supplied the power for the operation of his mill, whereby he had been greatly injured, and deprived of the use and enjoyment of said mill. Appellant asked damages in the sum of $10,000 for the diversion and obstruction of the water by appellee. Evidence was heard, and the case submitted to a jury, which returned a verdict in favor of appellee. From an order overruling appellant's motion and grounds for a new trial, this appeal is prosecuted.

Appellant assigns as grounds for reversal (1) the admission of incompetent evidence, and (2) errors in the instructions. Appellant complains particularly of the fact that the court permitted appellee to introduce evidence to the effect that roller flour had supplanted burr flour, and there was very little demand for the latter. As the diminution in the value of the use of the mill is the measure of damage in a case like this, we think the evidence was competent. It was proper for appellee to show that the value of appellant's mill had been diminished from causes other than the diversion of the water complained of. In other words, if it could be shown that appellant's mill really had no value, then it could not be further affected by the diversion of water.

The court instructed the jury as follows:

"(1). If you believe from the evidence that the defendant, by the erection of the dam and operation of its water system in connection therewith, diverted or diminished the natural flow of water in the river to the extent that plaintiff was unable to operate his

mill as fully as he might have done if the flow of water had not been so diverted or diminished, and that by reason of this fact plaintiff suffered a pecuniary loss in the operation of his mill, then you will find for plaintiff such sum as you believe from the evidence will be equal to the loss sustained on this account, which has accrued within and during the five years next preceding the 31st day of December, 1904, not exceeding $10,000, the amount claimed in the petition. Unless you so believe, you will find for defendant.

"(2) If you believe from the evidence that the defendant diverts the water, yet that it is not such a diversion as impedes, delays, or affects the running of plaintiff's mill, or causes any material injury to the plaintiff, then the law is for the defendant; and you should so find.

"(3) If you believe from the evidence that the volume of water that had hitherto flowed to plaintiff's mill had become so depleted from other causes than those resulting, if any, from the erection of said dam and diversion of the water by the defendant, and that thereby there would not be a sufficient quantity to operate said mill for a longer length of time than it has been possible to operate the same, then the law is for defendant; and you should so find.

"(4) If you believe from the evidence that there had been, prior to the five years next before the finding of the petition, such a change in the market in the locality of plaintiff's mill as that there was such a preference for flour made by the roller process, as distinguished from the burr process, of milling, as that it had rendered it unprofitable to plaintiff to operate his mill for any purpose, then there can be no recovery, even if you believe from the evidence that

said dam detains the water to such an extent as to forbid the operation of said mill.''

Instruction No. 4 is manifestly erroneous. Appellant had the right to operate the mill for the use of himself and family, even if there were no market for his flour. Such use by himself and family would be valuable; and, if this use was materially impaired by the diversion of water, appellant would be entitled to damages.

Upon the next trial of the case the court will instruct the jury as follows:

''(1) If you believe from the evidence that the defendant diverted or diminished the natural flow of water in Dix river to the extent that plaintiff was unable to operate his mill as fully as he might have done if the flow of water had not been so diverted or diminished, and that by reason of this fact plaintiff suffered a pecuniary loss in the operation of his mill, then you will find for plaintiff such sum as will fairly compensate him for the diminished value of the use of the mill, if any, occasioned by the diversion of water, if any, within and during the five years next preceding the 31st day of December, 1904, not exceeding $10,000, the amount claimed in the petition. Unless you so believe, you will find for the defendant.

''(2) If you believe from the evidence that the defendant diverted the water, yet it was not such a diversion as impeded, delayed, or affected the running of plaintiff's mill, or caused any material injury to plaintiff, then the law is for the defendant; and you should so find.''

It is the contention of appellee that the court erred in sustaining a demurrer to that paragraph of its answer pleading the five-year statute of limitation. It is insisted that, as the dam was completed in 1894,

and this action was not instituted until December 31, 1904, appellant's cause of action was certainly barred by the statute, as his cause of action accrued upon the completion of the dam. The law is well settled that, where injury to real estate results from the construction of a permanent structure, the cause of action accrues upon the completion of the structure. The measure of damage in such cases is the difference between the value of the property before it became generally known that the structure would be built and its value just after the completion of the structure. In such cases only one action for damages is allowed. In that action plaintiff must sue for all damages, past and future. Louisville & Nashville Railroad Co. v. Orr, 91 Ky. 109, 12 Ky. Law Rep. 756; 15 S. W. 8; Hay v. City of Lexington, 114 Ky. 665, 71 S. W. 867, 24 Ky. Law Rep. 1495; Johnson v. Owensboro & Nashville Railroad Co., 36 S. W. 8, 18 Ky. Law Rep. 276; Oliver v. Illinois Central Railroad Co., 74 S. W. 1078, 25 Ky. Law Rep. 235. If, then, it was shown that the diversion of water, as claimed by appellant, was occasioned solely by the construction of the dam in 1894, it would necessarily follow that his cause of action was barred at the time of the institution of this suit.

While counsel for appellee seem to have proceeded upon the idea that the construction of the dam was the basis of appellant's action, the petition sufficiently alleges the wrongful and unlawful use of the water by appellee to show that the real cause of appellant's complaint was, not the construction of the dam, but the taking and use of the water by appellee. In other words, the construction of the dam would not necessarily divert the water to such an extent as to materially interfere with the running of a mill. After the

dam filled up, the water would continue its natural flow, unless it were pumped out of the dam. The diversion, then, would be caused, not by the construction of the dam, but by taking the water out of the river. With this view of the case, we do not think appellant's cause of action accrued upon the completion of the dam, but that he is entitled to recover for such damages, if any, as may have resulted from the diversion of the water during the five years next preceding the filing of the petition.

The judgment is reversed, for proceedings consistent with this opinion.